UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                          Case No. 16-CR-20677-14
                                          Honorable Thomas L. Ludington

KENDRELL STEPHENS,

                Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
WITH PREJUDICE**

On August 2, 2017, Defendant Kendrell Stephens pled guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. ECF No. 330. He was sentenced to 95 months imprisonment. ECF No. 493. On June 22, 2020, Defendant sent a letter that was construed as a motion for compassionate release. ECF Nos. 710, 715. Defendant's motion was denied for failure to exhaust his administrative remedies. ECF No. 715. Defendant, through counsel, refiled his motion on July 27, 2020. ECF No. 717. On August 10, 2020, Plaintiff, the United States of America (the "Government"), filed a response brief, to which Defendant replied. ECF Nos. 723, 733. For the reasons stated below, Defendant's motion will be denied with prejudice.

**I.**

Defendant seeks a reduction of his sentence or a transfer to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A), which provides:

> The court may not modify a term of imprisonment once it has been imposed except…upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier, may reduce the term of imprisonment…
after considering the factors set forth in section 3553(a) to the extent that they are
applicable, if it finds that…extraordinary and compelling reasons warrant such a
reduction…and that such a reduction is consistent with applicable policy statements
issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A).[1] The statute provides three inquiries that must be addressed in

resolving Defendant's motion for compassionate release. First, whether Defendant fully exhausted

his administrative remedies with the Bureau of Prisons (the "BOP"). Second, whether a sentence

reduction is warranted in consideration of the factors set forth in 18 U.S.C. § 3553. Finally, whether

"extraordinary and compelling reasons warrant such a reduction" and whether the reduction is

consistent with the applicable Sentencing Commission policy statements. Each inquiry will be

addressed in turn.

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced

sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with

the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

By creating a compassionate-release option in the First Step Act, Congress gave
inmates an option to seek early release on health grounds. The seriousness of
COVID-19 and its spread in many prisons make it all the more imperative that the
prisons have authority to process these applications fairly and with due regard for
the seriousness of each inmate's risk. Free-floating exceptions to the rule, available
to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). Defendant is currently

housed at Federal Correctional Institution, Morgantown ("FCI Morgantown") in West Virginia. On

June 19, 2020, Defendant sent an electronic request for home confinement or compassionate

---

[1] To the extent Defendant seeks a transfer to home confinement, "[d]esignation of an inmate's place of confinement,
including placement in home confinement [under section 12003(b)(2) of the CARES Act], rests within the absolute
discretion of the BOP." *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *6 (E.D. Mich. July 17, 2020)
(internal quotation marks omitted). As a result, "the district court has no authority to grant relief under section
12003(b)(2)." *Id.*

release based on the COVID-19 pandemic to the Warden. ECF No. 717-1. The Government states

that the BOP denied his request. ECF No. 723 at PageID.5461. Accordingly, Defendant has

exhausted his administrative remedies with the BOP.

**B.**

The next consideration is whether the sentence reduction is warranted under the factors of

18 U.S.C. § 3553(a). They are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…

(5) any pertinent policy statement…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Defendant's underlying offense is for one count of conspiracy to possess with

intent to distribute and to distribute cocaine and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and

846. Drug-related offenses are serious, and Defendant's projected release date is not until

September 21, 2024. Additionally, this was not Defendant's first cocaine-related conviction.

According to his Presentence Investigation Report, Defendant was convicted of multiple cocaine-related counts in 2015. Furthermore, as explained in Section I.C.2. below, Defendant's criminal history, especially the underlying offense, demonstrates that he would be a danger to others or the community if released. Accordingly, under the § 3553 factors, Defendant is not entitled to a sentence reduction.

**C.**

The next inquiries to be resolved in addressing Defendant's motion for compassionate release are whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission promulgates the United State Sentencing Guidelines ("U.S.S.G."). The applicable policy statement is found in U.S.S.G. § 1B1.13, which provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Defendant has failed to demonstrate both an extraordinary and compelling reason for release and that he would not pose a danger to others or the community if released.

**1.**

The commentary of the policy statement provides additional guidance about which circumstances qualify as extraordinary and compelling reasons. It provides:

> [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.--

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is--

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13. Defendant is a 34-year-old male. He allegedly suffers from "chronic pericarditis" and asthma. ECF No. 717 at PageID.5431–32. Defendant states that, as a result of his pericarditis, he has twice undergone surgery to "drain the fluid around his heart." *Id.* at

PageID.5432. He argues that his medical conditions "make[] him a high risk for [COVID-19]." *Id.* at PageID.5432. He also emphasizes that FCI Morgantown has suffered a recent outbreak and that the closing of hospitals in West Virginia might delay medical treatment. ECF No. 733 at PageID.5678–79. The Government resists Defendant's assessment, arguing that pericarditis is not a risk factor for COVID-19 and that his medical records do not reflect an asthma diagnosis. ECF No. 723 at PageID.5473.

"Pericarditis is a condition in which the sac-like covering around the heart (pericardium) becomes inflamed." Pericarditis, MedlinePlus, https://medlineplus.gov/ency/article/000182.htm [https://perma.cc/7SFA-EKUH] (medical encyclopedia entry) (last visited Oct. 1, 2020). Defendant's medical records confirm that he was hospitalized for pericarditis in 2012 but do not indicate that the condition is chronic.[2] *See* ECF No. 736-3. For example, Defendant states that he recently "required emergency medical care at a nearby private hospital," that "follow up cardiac care was recommended," and that he was "given medication for asthma and pericarditis." ECF No. 733 at PageID.5677–78. In support, he offers two documents: one appears to be a medication fact sheet about "methylprednisolone tablets,"[3] and the other appears to provide patient information about pericarditis. ECF No. 736-2. While these documents are consistent with the claim that Defendant recently received pericarditis treatment, neither document suggests that the condition is chronic.

In other instances, Defendant's medical history is simply mischaracterized. Defendant's reply brief states, "[C]ounsel has recently been provided with medical documentation reflecting

---

[2] Defendant's Presentence Investigation Report suggests that Defendant may have developed pericarditis following an incident where he was shot in the neck.

[3] Methylprednisolone is a corticosteroid used to treat inflammation. Methylprednisolone, MedlinePlus https://medlineplus.gov/druginfo/meds/a682795.html [https://perma.cc/VAD8-MFZR] (medical encyclopedia entry) (last visited Oct. 1, 2020).

that Defendant is at risk for additional cardiac events in the near future. The medical notes [] reflect . . . 'patient is at risk for a cardiac event within a few months.'" ECF No. 733 at PageID.5677–78. The "medical note" in question is from 2012, when Defendant was hospitalized for pericarditis. ECF No. 736-3 at PageID.5736. As part of his treatment, Defendant underwent lab testing. *See* ECF No. 736-3. Someone—presumably a physician—commented on the lab results, dated July 28, 2012, that Defendant's "Troponin I" levels "suggest a patient at risk for a cardiac event within a few months." *Id.* at PageID.5736. Defendant does not claim to have suffered any such "cardiac event" following his hospitalization in 2012.

Moreover, there is little support for Defendant's suggestion that FCI Morgantown is experiencing an outbreak or that necessary medical care would be delayed. Presently, FCI Morgantown has two active COVID-19 cases. COVID-19, Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/4FNB-NG8H] (last visited Oct. 1, 2020). While some West Virginia hospitals have closed, these closures occurred before Defendant's recent treatment at an undisclosed "nearby private hospital." ECF No. 733 at PageID.5677. Additionally, FCI Morgantown is just over five miles from J.W. Ruby Memorial Hospital in Morgantown, West Virginia, and Defendant does not claim to have received inadequate or untimely treatment during his time at FCI Morgantown.

Defendant's allegation that he suffers from asthma finds some support in his medical history. ECF No. 736-3 at PageID.5711. Specifically, when Defendant was hospitalized for pericarditis in 2012, medical staff indicated that he had been previously diagnosed with asthma. *Id.* However, assuming Defendant's asthma symptoms persist, he has not suggested that they are severe. Ultimately, no matter the credence given to Defendant's assertions, neither asthma nor pericarditis constitute a "terminal illness" or "serious physical or medical condition," whether

considered alone or in conjunction with the risk of contracting COVID-19.[4] Defendant has, at most, alleged a generalized risk of developing serious COVID-19 symptoms, and a "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020); *see also United States v. Brown*, No. 19-20202, 2020 WL 2812776, at *4 (E.D. Mich. May 29, 2020) ("Without satisfactory evidence that Defendant's asthma is moderate to severe, and without additional risk factors, the Court cannot conclude that Defendant's conditions of confinement currently expose him to a risk of a dire outcome from COVID-19."). Accordingly, Defendant's present circumstance does not satisfy subsection (A).

The other subsections provided in the policy statement commentary are clearly inapplicable. Defendant's situation does not qualify as "extraordinary and compelling" under subsection (B) of the policy statement commentary because he is only 34 years old. Additionally, he does not qualify under subsection (C) because has not alleged the death or incapacitation of a spouse or caregiver of his minor children. Accordingly, Defendant has failed to demonstrate an extraordinary and compelling reason for release.

**2.**

The policy statement further directs the Court to consider the factors in 18 U.S.C. § 3142 in determining whether the defendant would be a danger to others or the community. The § 3142 factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

---

[4] Additionally, the CDC has not designated pericarditis as a COVID-19 risk factor. *See* People with Certain Medical Conditions, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/N2HE-YY2R].

terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g). These factors support the conclusion that Defendant would be a danger to others or the community if released. Most of Defendant's criminal history, as discussed in his Presentence Investigation Report, involves petty traffic offenses. In 2015, however, Defendant was convicted of multiple counts of possessing cocaine. Defendant was arrested after a search incident to a traffic stop yielded prescription drugs, cocaine residue, and related paraphernalia. Police searched Defendant at the jail shortly thereafter and discovered nearly an ounce of cocaine and nine grams of heroin concealed on his person. Defendant was sentenced to 24 months of probation. Defendant was still on probation when he was arrested for the underlying offense: conspiracy to possess with intent to distribute and to distribute cocaine and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

The underlying offense stems from Defendant's involvement in a drug trafficking conspiracy operated by the "Sunnyside Gang," a street gang in Saginaw, Michigan. The conspiracy was responsible for distributing substantial quantities of cocaine and heroin in and around Saginaw. The drugs were sometimes laced with fentanyl, a potent synthetic opioid that has

contributed to the increasing number of opioid-related overdose deaths. Fentanyl, CDC, https://www.cdc.gov/drugoverdose/opioids/fentanyl.html [https://perma.cc/SD57-KJ9D] (last visited Oct. 1, 2020). Defendant was primarily tasked with diluting the drugs before distribution.

"The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted). "[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010). Additionally, Defendant has not offered a compelling reentry plan. He suggests that, upon release, he could return to Saginaw with his fiancé or move to Louisiana and reside with family. ECF No. 733 at PageID.5683. Defendant concedes that his family would have to support him while he searches for employment. *Id.* Defendant does not explain how such living conditions would differ from those that preceded the underlying offense.

Accordingly, Defendant's participation in a large-scale drug trafficking operation while on probation, as well as his lack of a convincing reentry plan, strongly suggest that he would be a danger to others or the community if released.

**II.**

Accordingly, it is **ORDERED** that Defendant Kendrell Stephens' motion for compassionate release, ECF No. 717, is **DENIED**.

Dated: October 7, 2020                          s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge